**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **HEATHER GIFFORD,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Case No. 1:12-cv-183 SNLJ** |
| | **)** | |
| **POPLAR BLUFF R-1 SCHOOL DISTRICT** | **)** | |
| **d/b/a POPLAR BLUFF TECHNICAL** | **)** | |
| **CAREER CENTER** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**MEMORANDUM and ORDER**

Plaintiff was a cosmetology student in the defendant Poplar Bluff R-1 School District

d/b/a Poplar Bluff Technical Career Center ("School District").   Plaintiff filed this lawsuit

against defendant following a dispute about plaintiff's tuition payment.  The lawsuit was

originally filed in the Circuit Court of Butler County, Missouri, on October 29, 2012.  The

defendant removed the matter to this Court on November 5, 2012.

This Court granted summary judgment to defendant on several claims, and two counts

remain: Count III for breach of contract, and Count VI, for deprivation of plaintiff's property

interest in obtaining a license from the Board in violation of 28 U.S.C. § 1983.  At the pretrial

conference on January 2, 2014, plaintiff's counsel conceded that both remaining claims required

a finding that plaintiff did not owe the School District contractual monies as of July 14, 2008.

Defendant moved for summary judgment (#49), and the matter has been fully briefed.

## I.    Background

Plaintiff's case has been made procedurally and substantively complicated by what seem to be ever-changing facts.[1]  However, the undisputed facts as they stand now are as follows. Plaintiff was admitted and enrolled in the School District's cosmetology program for the year 2008.  At that time, plaintiff paid a portion of the $4,490 tuition pursuant to the Deferred Payment Program, which will be described below.  The cosmetology program required students to attend 1,220 hours to complete the program.  Excessive absenteeism can result in a student's termination from the program, and plaintiff was in fact terminated from the program for that reason in July 2008.   Plaintiff appealed that decision, and the School District sent her a letter stating that she could re-enroll in the program, but plaintiff states that she never got the letter because the District sent it to the wrong address.  Plaintiff did not re-enroll as a result.  Instead, plaintiff enrolled in another accredited cosmetology program and obtained a Certificate in Cosmetology.

On July 14, 2008, defendant reported to the Missouri State Board of Cosmetology ("Board") that plaintiff had not made a complete payment for the 2008 cosmetology program. When plaintiff sought her license from the Board, the Board refused to grant the license due to the defendant's report to the Board that she had an outstanding balance with the defendant. Plaintiff ultimately paid the balance (which she disputed was owed) in order to take the licensing exam and obtain her license from the Board.

---

[1]For example, plaintiff's complaint alleged she was in an automobile accident during the course of the cosmetology program and missed classes for that reason.  Later, plaintiff said she was injured before the program started, and she missed classes for her grandmother's illness as well as her own recovery.  Plaintiff also admitted just days before trial that her termination from the program was in fact proper.

The defendant's student handbook (which plaintiff received) included a section entitled

"Institutional Refund Policy," which states

> In the case of post-secondary student termination, the following refund policy shall apply to all post-secondary students:
>
> 1.   All semester tuition, books, and fees are due and payable the first day of class.  A deferred payment plan is available....
> 2.   If a student withdraws within the first five (5) days of the instructional period, the student will receive a refund of 90% of the tuition. ....
> 3.   No refunds to students will be made after the fifth (5th) day of class....

Plaintiff had also executed a document entitled "Important Information," which included the

"Deferred Payment Plan" to which she subscribed.  That document stated

> DEFERRED PAYMENT SCHEDULE:
>
> The primary responsibility of financing your education lies with you and your family. Although tuition and fees are due and payable the first day of class, a signed *deferred payment plan allows you to defer payments of required tuition and fees*. (See the Enrollment Aid Coordinator for an Enrollment Agreement and Pay Schedule)
>
> *Cosmetology consists of 1220 Clock hours. This will be broken into two payment periods of 610 hours for the purpose of Financial Aid disbursement and collection*.
>
> A deferred payment plan needs to be on file prior to the start of classes. Failure to sign a deferred payment plan or pay tuition and fees in full, by the first day of class may result in the cancellation of your registration.
>
> **You Need to Understand:**
>
> *After the first five days of class you are responsible for the payment period's tuition*. (See Student handbook)
>
> A written statement declaring your intention to withdraw should be turned in to the office of the Cosmetology Coordinator.
>
> To rescind a withdrawal, a written statement requesting reinstatement may be filed in the office of the PBTCC Director.

If you withdraw from the Poplar Bluff Technical Career Center the adjusted total balance on your account is due and payable immediately.

DEFERRED PAYMENT PLAN

*I agree that I am financially responsible for the payment of all tuition and fees charged for all services provided.* I acknowledge that the total charges for tuition fees and services are due and payable upon receipt of the bill. I give my permission for all grant, scholarship, or loan money to be applied to my account until my total balance is cleared.

I authorize PBTCC to hold any Title IV funds earned for a reasonable period of time in order to facilitate payment of my account.

I understand that past due amounts may prevent me from graduating and receiving official transcripts, thus preventing me from taking the state board of examination.

I agree to pay interest on all amounts due, computed at the annual rate of 8.4% (as defined by Public Law No. 92-321) and calculated monthly on the outstanding balance, plus all collection agency costs and/or reasonable attorney fees if the account is placed for collection.

(Emphasis added.)

Remaining for disposition in this case are plaintiff's claims that defendant breached its contract with her (Count III) and that defendant deprived her of her property interest in obtaining a license from the Board in violation of 28 U.S.C. § 1983 (Count VI).

Defendant now seeks summary judgment on the remaining two counts.

## II.    Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962).  The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273.  After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party bears the burden

of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury

to return a verdict for it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light

most favorable to the party opposing the motion and give that party the benefit of any inferences

that logically can be drawn from those facts.  *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.

1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party.

*Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With

these principles in mind, the Court turns to the discussion.

## III.    Discussion

"To establish a breach of contract, the party claiming breach must show: (1) the existence

of an enforceable contract; (2) the presence of mutual obligations under the contract; (3) the

failure to perform an obligation specified in the contract; and (4) damages."  *Sch. Dist. of Kansas*

*City, Missouri v. Missouri Bd. of Fund Comm'rs*, 384 S.W.3d 238, 259 (Mo. App. W.D. 2012).

Only the third element is at issue here.  Originally, plaintiff alleged that defendant

breached their contract "by expelling her from its Cosmetology Program thereby breaching the

agreement between the parties hereto."  (Cmplt. ¶ 28.)  However, plaintiff has since stipulated

that she was properly terminated from the program.  (#26, ¶ 13.)

Now, plaintiff states that the issue before the Court is whether the Deferred Payment Plan

required plaintiff to pay the full tuition despite her early expulsion.  If the Court determines the

Plan so required plaintiff to pay the full tuition, then plaintiff agrees that defendant is entitled to

summary judgment.  (#52 at 1-2.)

Defendant characterizes this claim as an "alternate," previously unpleaded theory. Nonetheless, defendant agrees that plaintiff's claims fail if the Court determines that plaintiff owed the full tuition under the contract. Defendant cites to several documents in support of its contention that plaintiff owed all $4,490 in tuition. The documents indicated that full tuition or a signed Deferred Payment Plan was due the first day of class and that no refunds would be made after the fifth day of class. Further, under the terms of the Deferred Payment Plan, plaintiff was "responsible for the payment of all tuition and fees charged for all services provided."

Plaintiff highlights the provision that the cosmetology program was "broken into two payment periods of 610 hours," and "after the first five days of class you are responsible for the payment period's tuition." Plaintiff states that she was terminated after completing 570 hours, and thus that she should not have been responsible for the second period's tuition payment. She also points out that the documents state that she was responsible for "payment of all tuition and fees charges for all services provided." Because, plaintiff says, she was not "provided" with the second half of the program, she was not responsible for paying for the second period's tuition payment.

Setting aside the matter of plaintiff's unpleaded argument regarding the effect of the Deferred Payment Plan, and assuming the Deferred Payment Plan would allow plaintiff to not pay if she did not attend the program, the program's "second session" (the 610th hour of instruction) was reached on June 17, 2008. Plaintiff attended the program on the five instruction dates after June 17, but she missed portions of the instruction provided on those dates. The policy plainly states that the program was divided into two 610-hour periods, and that "[a]fter the first five days of class you are responsible for the payment period's tuition." Plaintiff was terminated on July 2, 2008 because she had *attended* only 570 hours of the 651 hours provided.

The plain language of the parties' contract required that plaintiff pay the full $4,490 tuition by the fifth day of the second session, which had passed by that time. The "deferral" of the second portion of the payment did not excuse her from paying, even under her unlikely interpretation of the contract.

Because plaintiff was required to pay the full $4,490 tuition, both of plaintiff's remaining claims fail. Summary judgment will therefore be granted to defendant.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment is **GRANTED**.

Dated this __11th__ day of April, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE